IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

H. BRENT,                          )
                                   )
      Plaintiff,                   )
                                   )
   vs.                             )     No. 19-cv-2446-TLP-dkv
                                   )
                                   )
DEPARTMENT OF VETERANS AFFAIRS     )
DEBT MANAGEMENT CENTER,            )
                                   )
      Defendant.                   )
_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS
and ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
and
ORDER DENYING PLAINTIFF'S MOTION TO COMPELL and
PLAINTIFF'S MOTION TO AMEND AS MOOT

_____

On July 11, 2019, the plaintiff, H. Brent ("Brent"), filed a *pro se* "Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983" against the defendant, the Department of Veterans Affairs Debt Management Center ("the DMC"). (Compl., ECF No. 1.) Also, on July 11, 2019, Brent filed a motion to proceed *in forma pauperis*, (ECF No. 2), which the court granted on July 12, 2019, (ECF No. 7). Brent thereafter filed an amended complaint on July 18, 2019. (Am. Compl., ECF No. 8.) Subsequently, Brent filed a motion to compel, (ECF No. 14), a motion for summary judgment, (ECF No. 21), and a motion to amend, (ECF No. 22).

Now before the court is the DMC's motion to dismiss pursuant

to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Mot. to Dismiss, ECF No. 24.) Brent did not file a response. This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

For the following reasons, it is recommended that the DMC's motion to dismiss be granted and that, in light of the court's recommendation, Brent's motion for summary judgment be denied as moot. Additionally, Brent's motion to compel and motion to amend are denied as moot.

## I. PROPOSED FINDINGS OF FACT

This case arises out of a series of communications between Brent and the DMC regarding Brent's pension benefits from and financial obligations to the Department of Veterans Affairs (the "VA"). Although difficult to ascertain, from what the court can glean from Brent's original complaint and amended complaint, he alleges that the DMC misled him, intentionally conspired against him, defamed him, intentionally inflicted emotional distress, and defrauded him. (Compl., ECF No. 1; Am. Compl., ECF No. 8.)

According to Brent, on May 24, 2019, he made a phone call to a toll-free number to inquire about his payments from the VA. (Compl. 2, ECF No. 1; Am. Compl. 2, ECF No. 8.) Brent alleges that he spoke to a representative who asked Brent whether he

2

received a letter dated May 2, 2019. (*Id.*) Brent responded by stating that he did not receive a letter dated May 2, 2019. (*Id.*) The May 2, 2019 letter – attached to the DMC's motion to dismiss – explained to Brent that his countable income exceeded the income limit for a veteran with no dependents and that, as a result, the VA had paid him too much and would need the excess money to be repaid. (May 2 Letter, ECF No. 24-1.) The letter also refers to a previous letter dated December 4, 2018 which allegedly stated that the DMC was proposing to stop his pension benefits in response to his excess income. (*Id.*)

Brent further alleges that, although he did not receive the May 2, 2019 letter, he received another letter on May 24, 2019, dated May 20, 2019, which is what prompted him to make his first phone call to the DMC. (Am. Compl. 2, ECF No. 8.) According to Brent, the content of the letter dated May 20, 2019 "stated clearly that nothing was going to take place with [his] pay" so long as he completed and sent VA Form 0748 within thirty days. (*Id.*) The May 20, 2019 letter – also attached to the DMC's motion to dismiss – states Brent was overpaid by $23,798.14 and that the DMC would withhold $428.83 until the amount was recouped. (May 20 Letter, ECF No. 24-2.) The letter also states that withholding was scheduled to begin in August of 2019. (*Id.*) Contrary to Brent's contention, the letter simply states that if he wishes, he may dispute the debt or request a waiver and that it was "important to

3

pay this debt within thirty days of the letter or tell [the DMC] which option [Brent wanted to choose]." (*Id.*)

Brent contends that on May 31, 2019, the first payment had already been reduced. (Am. Compl. 2, ECF No. 8.) Brent subsequently called the same toll-free number again. (*Id.*) According to Brent, the representative was unhelpful, and Brent called his attorney who "fired off a letter to the [DMC]." (*Id.*) Brent essentially alleges that this was all part of a plot to mislead him by allowing him to believe he had more time to respond to the DMC's May 20, 2019 letter. (*Id.;* Compl. 2, ECF No. 1.) Brent states that "two different letter[s] [were mailed] to two different people [i]n two different states." (Compl. 2, ECF No. 1.) Brent claims that the first letter – the May 2, 2019 letter – was mailed from the DMC office in St. Paul, Minnesota, to his attorney Paul Jennings in Lacey, Washington, on May 2, 2019. (*Id.* at 4.) According to Brent, this was a "decoy" to mislead him and his attorney. (Compl. 2, ECF No. 1.) Brent additionally makes a vague allegation that the May 20 letter was "done by someone else," apparently insinuating that there was a larger plot between employees at the DMC. (*Id.*)

Moreover, Brent contends that the DMC "conspired against him and fraudulently share[d] . . . information with each other through mail and wire communication." (Am. Compl. 2, ECF No. 8.) Additionally, Brent contends that the alleged conduct by the DMC

4

also resulted in his credit score dropping from a 771 to a 602. (Compl. 6, ECF No. 1.)  In his amended complaint, Brent also makes various other allegations such as that the DMC defamed him and intentionally inflicted emotional distress.  (Am. Compl. 2, ECF No. 8.)  Lastly, Brent contends that he is bringing a civil Racketeering Influenced and Corrupt Organizations Act ("RICO") and criminal fraud claims against the DMC. (*Id.* at 1.)  According to the amended complaint, Brent seeks actual damages in the amount of $7 million and punitive damages in the amount of $19.5 million dollars.  (*Id.* at 2.)

Aside from the two May 2019 letters, attached to the DMC's motion to dismiss are a letter dated November 6, 2019 addressed to Brent and a declaration of E. Douglas Bradshaw, Jr. ("Bradshaw"), the Chief Counsel, Torts Law Group, in the Office of General Counsel, for the VA.  The November 6, 2019 letter states that Brent's request for waiver of his pension debt has been approved by the Committee on Waivers and Compromises.  (November Letter, ECF No. 24-4.) Additionally, the letter explains that the granting of the waiver forgives the indebtedness and thus, there is no need for Brent to take any further action.  (*Id.*)  In his declaration, Bradshaw states that there have been no administrative tort claims filed related to the allegations Brent makes in this action. (Bradshaw Decl., ECF No. 24-5.)

II.   PROPOSED CONCLUSIONS OF LAW

A.      Legal Standard

The DMC argues that this court lacks subject matter jurisdiction on three bases: mootness, the Veterans' Judicial Review Act (the "VJRA"), and failure to exhaust administrative remedies. (Mot. to Dismiss, ECF No. 24.) Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is a threshold issue which a court must determine before reaching other issues. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). "Federal Courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "A party seeking to invoke the jurisdiction of the federal courts . . . bears the burden of establishing that such jurisdiction exists." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008)(per curiam).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure.

6

*Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Further, the courts are not required to act as counsel for a *pro se* litigant; nor are they required to sort through the pleadings to create a claim on behalf of the plaintiff.  *Pliler v. Ford*, 542 U.S. 225, 231 (2004)("[D]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.")(internal quotation marks omitted).  Requiring the court "to ferret out the strongest cause of action on behalf of the *pro se* litigants . . . would transform the courts from neutral arbiters of disputes into advocates for a particular party."  *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011).  "While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."  *Id.*

B.   Mootness

The DMC argues that the court lacks subject matter jurisdiction over Brent's claim because the issue is now moot. (Mot. to Dismiss 2, ECF No. 24.)  To support this argument, the DMC explains that Brent, through his counsel, on May 23, 2019, requested a waiver of his debt.  (*Id.*)  At that time, the DMC ceased collection of the debt until the waiver was processed. (*Id.*)  On September 23, 2019, a waiver of $23,798.14 was granted,

7

(*id.*; Decision on Waiver, ECF No. 24-3), and on November 6, 2019, Brent received a letter stating that his request for a waiver had been approved and that there was no further action required, (November Letter, ECF No. 24-4). Accordingly, the DMC argues that once Brent's debt was forgiven and his pension reinstated, Brent received the original relief that he sought, making the matter now moot.

"Article III of the Constitution limits the judicial power to the adjudication of 'Cases' or 'Controversies.'" *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 137 (2007)(citing U.S. Const., art. III, § 2). If a controversy is moot, the court lacks subject matter jurisdiction over the action and the cause must be dismissed under Federal Rule of Civil Procedure 12(b)(1). *Sanchez v. Verified Pers., Inc.*, 2012 WL 1856477, at *3 (W.D. Tenn. May 21, 2012), vacated (Aug. 7, 2012)(citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). This requirement "must be met in order to file a claim in federal court and [] must be met in order to keep it there." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 713 (6th Cir. 2011).

"[A] federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal.*, 506 U.S. at 9 (internal quotation marks omitted); *see also Coalition for Gov't*

8

*Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004)("Under the 'case or controversy' requirement, we lack authority to issue a decision that does not affect the rights of the litigants."); *Sw. Williamson Cnty. Cmty. Ass'n, Inc. v. Slater*, 243 F.3d 270, 276 (6th Cir. 2001)(same).  The mootness question turns on whether a federal court can afford a litigant any "effectual relief."  *Coalition for Gov't Procurement*, 365 F.3d at 458.

Brent sought damages as a result of the alleged harm he suffered from the DMC requiring him to pay back the debt. According to the Decision and November 6, 2019 letter, there is no longer a case or controversy and, to the extent Brent has sought relief from having to pay this debt, it is impossible for the court to grant any relief to Brent because Brent no longer must pay the debt.  If events occur during the case, including during the appeal, that make it "impossible for the court to grant any effectual relief whatever to a prevailing party," the appeal must be dismissed as moot.  *Church of Scientology of Cal.*, 506 U.S. at 9, 12, 113.  Such an event occurred here:  the very harm Brent alleged the DMC was causing ceased to exist entirely when the DMC waived the entire amount of Brent's debt.  As such, Brent's claim is moot, and it is recommended Brent's claim be dismissed for lack of subject matter jurisdiction.

C.   <u>Veterans' Judicial Review Act</u>

In his amended complaint, Brent admits that he has no problem with paying the debt he originally owed to the VA but disliked the "method" the DMC used to get the money overpaid back. (Pl.'s Allegations, ECF No. 8-1.) The DMC therefore argues that, to the extent Brent's complaint is construed as challenging the department's benefits determinations, he is precluded from doing so by the VJRA. Pursuant to 38 U.S.C. § 511(a), the "Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision . . . the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court."[1]  38 U.S.C. § 511(a). Section 7104(a) further provides that "all questions in a matter which under [§ 511(a) of Title 38] is subject to decision by the Secretary shall be subject to one review on appeal to the Secretary. Final decisions on such appeals shall be made by the Board [of Veterans' Appeals]." 38 U.S.C. § 7104(a). The decisions of the Board of Veterans' Appeals (the "Board") is then reviewable by the Court of Appeals for Veterans Claims, which has the "exclusive jurisdiction to review decisions of the Board []." 38 U.S.C. § 7252(a).

Section 7252(c) further provides that decisions of the Court

---

[1] It should be noted that § 511(b) provides for four exceptions to the general rule that decisions of the Secretary are not reviewable. However, none of those exceptions apply here. *See* 38 U.S.C. §§ 511(b)(1)-(4).

of Appeals for Veterans Claims are subject to review as provided in § 7292. Section 7292(a) states:

> After a decision of the United States Court of Appeals for Veterans Claims is entered in a case, any party to the case may obtain a review of the decision with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation . . . or any interpretation thereof . . . that was relied on by the Court in making the decision. Such review shall be obtained by filing a notice of appeal with the Court of Appeals for Veterans Claims within the time and in the manner prescribed for appeal to United States courts of appeals from United States district courts.

38 U.S.C. § 7292(a). Subsection (c) further states that the "United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof." 38 U.S.C. § 7292(c).

The Sixth Circuit has held that the text of the VJRA and the "extensive legislative history" of the VRJA demonstrate Congress's intent to make the process outlined above the exclusive source of review in veterans' benefits claims. *Beamon v. Brown*, 125 F.3d 965, 970 (6th Cir. 1997). In making this determination, the Sixth Circuit explained that § 511 creates "broad preclusion of judicial review of VA decisions." *Id.* Accordingly, the Sixth Circuit has held that the VJRA deprives district courts of subject matter jurisdiction over VA decisions relating to a plaintiff's benefits claim, including constitutional issues. *Id.* at 970-974. *See also Newsom v. Dep't of Veterans Affairs*, 8 F. App'x 470, 471 (6th Cir.

11

2001)(holding that the district court lacked subject matter jurisdiction because Congress had given exclusive jurisdiction over claims regarding veterans benefits with the Court of Veterans Appeals); *Thompson v. Veterans Affairs*, 20 F. App'x 367, 369 (6th Cir. 2001)(explaining that the VRJA precludes district courts from reviewing decisions on veteran's benefits, including constitutional challenges to the procedures); *Aikens v. U.S. Dep't of Veterans Affairs*, 2010 WL 625369, *2 (E.D. Tenn. Feb. 17, 2010)("[N]o decision that affects the provision of veterans benefits may be reviewed by any court by mandamus or otherwise.")

Brent's complaint arises from the letters sent to him by the VA showing the VA's intent to reduce his benefit payments due to Brent being overpaid. As explained above, complaints such as Brent's – those involving decisions as to a veteran's benefits – fall within the purview of the VJRA. Such decisions are to be taken to the Board of Veterans Appeals, and from there, exclusive jurisdiction rests with the Court of Appeals for Veterans Affairs. Furthermore, only the United States Court of Appeals for the Federal Circuit then has the ability to review an appeal from the Court of Appeals for Veterans Affairs. Accordingly, this court does not have subject matter jurisdiction over Brent's claims relating to his veteran's benefits. As such, it is recommended that Brent's claims be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

12

D.   Failure to Exhaust Administrative Remedies

Brent also alleges state tort claims, specifically defamation and intentional infliction of emotional distress. (Am. Compl. 1, ECF No. 8.) The DMC's final argument as to why Brent's complaint must be dismissed for lack of subject matter jurisdiction is that Brent has failed to exhaust his administrative remedies as required by the Federal Tort Claims Act (the "FTCA").

The United States, as a sovereign, must consent to be sued. *See, e.g.*, *Brott v. United States*, 858 F.3d 425, 430 (6th Cir. 2017). The FTCA, however, provides for a limited waiver of the United States' sovereign immunity with respect to specific tort claims. *Hatcher v. United States*, 855 F. Supp. 2d 728, 731 (E.D. Tenn. Mar. 31, 2012). The FTCA specifically waives immunity for monetary damages for "injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission" of the government. 28 U.S.C. § 2675. It does not, however, waive the United States' immunity for the tort of defamation. 28 U.S.C. § 2680(h); *See also United States v. Sm*ith, 499 U.S. 160 (1991); *Rector v. United States*, 243 F. App'x 976, 979 (6th Cir. 2007). Accordingly, it is recommended that this court lacks subject matter jurisdiction over Brent's defamation claim because the United States has not consented to suit under the FTCA for such a claim. As such, the remainder of this section addresses whether the court has subject matter jurisdiction over Brent's intentional

13

infliction of emotional distress claim.

The FTCA is the exclusive method of bringing a tort claim against the United States. 28 U.S.C. § 2679. "It is [] well settled that the [FTCA] bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *Barnes v. United States*, 2005 WL 1801613, at * 1 (E.D. Tenn. July 29, 2005)(citing to 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993)). Exhaustion of the administrative remedies is considered a prerequisite to the filing of a tort claim against the United States. *McNeil*, 508 U.S. at 113; *Joelson v. United States*, 86 F.3d 1413,1422 (6th Cir. 1996). Accordingly, if a jurisdictional prerequisite is not satisfied, the court lacks subject matter jurisdiction. *Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002)("Plaintiffs failed to exhaust their administrative remedies in a timely fashion in accordance with the [FTCA] prior to bringing the instant claim against the government, which deprived the district court of jurisdiction to entertain their claims.").

Section 2675(a) of the FTCA states that an "action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). "A claim submitted to

the proper administrative agency is considered sufficient to satisfy the exhaustion requirement if it is a 'written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death." *Blakely*, 276 F.3d. at 864 (citing *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1991)(per curiam)).

In its motion to dismiss, the DMC attached the declaration of Bradshaw. (Bradshaw Decl., ECF No. 24-5.) According to Bradshaw, one of his responsibilities is to adjudicate administrative claims filed against the VA pursuant to the FTCA. (*Id.* at ¶ 2.) After review, Bradshaw states that no record maintained by his office reflected any administrative tort claim related to this action filed by Brent. (*Id.* at ¶ 4.) Furthermore, Brent makes no allegations whatsoever in his complaint or amended complaint that he exhausted his administrative remedies by timely filing a sufficient claim with the VA and that the VA ultimately denied such claim.[2] It is Brent's burden to establish jurisdiction. *Spurr v. Pope*, 936 F.3d 478, 482 (6th Cir. 2019). Because Brent has alleged tort claims against the VA – a federal agency – and he has failed to plead any facts which suggest that he exhausted his

---

[2] As an attachment to his amended complaint, Brent included a letter dated May 21, 2019 sent by Brent to the DMC stating that he intended to commence a civil suit against the DMC for $26.5 million. (Letter to DMC, ECF No. 8-2.) This letter, however, is not the type of "claim" the FTCA contemplates.

15

administrative remedies, this court does not have subject matter jurisdiction over these claims. As such, it is recommended that Brent's tort claims be dismissed pursuant to 12(b)(1) of the Federal Rules of Civil Procedure.

E.  Brent's RICO and Fraud Claims

To the extent that Brent attempts to state a claim pursuant to the civil RICO statutes, he fails to do so. Section 1962(c) of RICO makes it unlawful "for any person . . . associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" 18 U.S.C. § 1962(c). Section 1962(d) makes in unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)." 18 U.S.C. § 1962(d). To establish a violation of § 1962, a plaintiff must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Orlowski v. Bates*, 146 F. Supp. 3d 908, 928 (W.D. Tenn. 2015)(citing *West Hills Farms, LLC v. ClassicStar Farms, Inc.*, 727 F.3d 473, 483 (6th Cir. 2013)).

Brent has failed to provide any factual support for any of the elements required under RICO. His conclusory statement that the DMC is guilty of violations of RICO and his vague allegations that DMC employees conspired against him are not sufficient to establish the required elements of a civil RICO claim. Furthermore, the Sixth Circuit has dismissed civil RICO claims

16

against the federal government. *See Berger v. Pierce*, 933 F.2d 393, 396 (6th Cir. 1991); *Plant v. I.R.S.*, 943 F. Supp. 833, 837 (N.D. Ohio 1996).

To the extent that Brent attempts to assert claims pursuant to 18 U.S.C. § 1341 and § 1343, he also fails to state a claim. Section 1341, titled "Frauds and swindles," and § 1342, titled "Fraud by wire, radio, or television," make various actions of mail fraud and other fraudulent behavior criminal. 18 U.S.C. §§ 1341 & 1343. The Sixth Circuit, however, has found that, although a criminal statute may imply a private cause of action for damages, where the statute in question is a "bare criminal statute" with no indication that civil enforcement is available, a private cause of action will not be inferred. *Marx v. Centran Corp.*, 747 F.2d 1536, 1549 (6th Cir. 1984.) Moreover, the Sixth Circuit has determined that there is no private cause of action for alleged violations of federal criminal mail and wire fraud statutes. *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997). Accordingly, Brent has no private right of action to sue for damages from alleged fraud pursuant to § 1341 and § 1343. Although not discussed by the DMC in its motion, it is recommended that the court dismiss *sua sponte* Brent's civil RICO claim and claims brought pursuant to § 1341 and § 1343 for failure to state a claim upon which relief may be granted.

## III. RECOMMENDATION AND ORDER

For the foregoing reasons, it is recommended that the DMC's motion to dismiss Brent's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure be granted and that Brent's RICO, § 1341, and § 1343 claims be dismissed *sua sponte* for failure to state a claim. In light of this recommendation, it is also recommended that Brent's motion for summary judgment be denied. Furthermore, because the court recommends dismissal of Brent's claims, Brent's motion to amend and motion to compel are denied as moot.

Respectfully submitted this 11th day of February 2020.

> s/ Diane K. Vescovo_____
> DIANE K. VESCOVO
> CHIEF UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.